## AMAKER v. NEW.

1. A debtor made a voluntary deed of all his land to A in trust for the debtor's wife for life, with remainder to his children. His creditor promptly thereafter obtained judgment, issued execution, levied, sold, purchased, and obtained possession. The debtor died and his widow sued for dower in this land, and 158 acres were allotted to her for life as and for her dower, and she took possession, and retained it until her death seventeen years later, when her daughter took possession, claiming under her father's deed to A, trustee. In action by the vendee of the said purchaser, instituted soon after this widow s death, to recover these 158 acres, *held*, that the statute of limitations did not prevent the plaintiff from relying on the fraud in the trust deed interposed as a defence to his recovery of this land. MR. CHIEF JUSTICE SIMPSON, *dissenting*.

2. A deed from a grantor to a trustee, in trust for the grantor's wife and children, based only upon the consideration of love and affection and $10, is not such a marriage settlement as the law required (in 1866) to be recorded in the office of the secretary of State.

3. In causes tried by a jury, the judgment below cannot be sustained upon grounds other than those stated in the charge to the jury.

Before HUDSON, J., Orangeburg, September, 1889.

This was an action by J. H. Amaker against Frances New and Pickens New, to recover 158 acres of land, commenced March

18, 1887. The case is thus fully stated in the dissenting opinion of the Chief Justice:

This is a contest over a tract of land of 158½ acres, situate in Orangeburg County. Both parties claim from a common source, and the question below was, which had the better title? The facts, so far as necessary to be stated here, were as follows: one Absalom Inabnet, in 1866, was indebted to several parties; among them to one N. E. W. Sistrunk. While thus indebted he conveyed to his son-in-law, William H. Bennett, a tract of land containing some 300 acres, of which the 158½ acres were a part, in trust for the sole and separate use of his, the grantor's, wife, Mary A. Inabnet, for her life, and at her death to be equally divided among his children, &c.; the consideration of this deed, as expressed therein, being natural love and affection and $10. The deed was duly recorded. Judgments were obtained by the aforesaid creditors, including N. E. W. Sistrunk, against the said Absalom Inabnet, after the execution of this deed, to wit, in 1866, and in 1868 the land was levied upon and sold by the sheriff after a return of *nulla bona* upon the execution of Sistrunk. At this sale Sistrunk became the purchaser, who, it seems, went into possession. In 1869, Mary Inabnet, the widow of Absalom, and the *cestui que trust* for life under the deed to W. H. Bennett, by proceeding in the Probate Court, obtained dower in the land, to wit, the 158½ acres mentioned above, and now in dispute. In 1884, Sistrunk having died, the 158½ acres was included in partition proceedings between his heirs at law, and at a sale ordered in said proceeding the plaintiff here became the purchaser, receiving a deed from the master, March 2, 1885. Sistrunk, in his life-time, had sold off the remainder of the 300 acres. In 1886, Mary Inabnet, the widow of Absalom, and the dowress of the 158½ acres in dispute, died, and the defendant, Frances New, a daughter of Absalom, took possession, and with her husband, Pickens New, has continued in possession up to this time, claiming under the trust deed to Bennett. Under this state of facts, the plaintiff brought the action below for the recovery of the 158½ acres. Under the charge of his honor, Judge Hudson, presiding, the verdict was for the defendants.

The gist of plaintiff's action was, that the deed under which defendants claimed was a voluntary deed, executed while the grantor was in debt to plaintiff· and others; and it having been developed by a return of *nulla bona* that this debtor had no other sufficient property to pay said debts, that said deed was null and void and fraudulent, and consequently that the sale by the sheriff to Sistrunk was a valid sale, and conveyed the land free from said voluntary deed. The defendants relied upon the statute of limitations, contending that Sistrunk·not having instituted proceedings within the statutory period to vacate and set aside the Bennett trust deed, neither he, if he was alive, nor those claiming under him, could now at this late date do so. His honor sustained this defence, instructing the jury "that, after six years after Sistrunk got title, he was barred and deprived of assailing the deed on the ground of fraud upon creditors, and that the plaintiff, with constructive notice of this deed, is affected by the neglect of Sistrunk, under whom he claims, and that, if more than six years had elapsed from the time this deed was put on record to the time he instituted suit, he is debarred from assailing the deed on the ground of fraud against existing creditors, and. this deed being assailed in this way, the defendant has a superior title, and must prevail." The plaintiff also claimed that the Bennett deed was a marriage settlement, and. not having been recorded in the office of the secretary of State, was void as to him. This position was overruled by his honor.

The counsel of appellant in his argument states the questions involved in his exceptions as follows: "(1) Is not property, voluntarily transferred in fraud of existing creditors, subject to execution in favor of such creditors, precisely as if such transfer had not been made? (2) Does not the title of the sheriff to lands sold as the property of one who has voluntarily conveyed the same to another, in fraud of existing creditors, transfer to the purchaser the legal title to the lands sold, and not merely the right to the legal title, and to have the fraudulent transfer vacated and set aside, by appropriate proceedings in a court of competent jurisdiction, within six years after said fraudulent transfer? (3) Under the circumstances of this case, is the plaintiff barred by the statute of limitations from assailing the voluntary

deed of conveyance made by Absalom Inabnet to William H. Bennett, on the ground that the same was executed in fraud of the then existing creditors of the said Absalom Inabnet? (4) Is the voluntary deed of conveyance from Absalom Inabnet to William H. Bennett void for want of recording in the office of the secretary of State?"

The charge of the judge to the jury, so far as the questions raised by this appeal are concerned, was as follows:

But the statute of limitations and the lapse of time is pleaded by these defendants, and I regard the plea as being the same as if it were pleaded against N. E. W. Sistrunk in an action to recover possession of this land, because the present plaintiff holds Sistrunk's title. Then the question arises, could Sistrunk, in his life-time, have prevailed in this action? If he had brought the action, could this defence of the statute of limitations have been set up? Is this defendant prevented by the conduct of the life tenant, the mother, from now setting up the plea of the statute of limitations? Did the mother do anything that would deprive the present defendant from defending her legal rights to this land? The mother, on the death of her husband, recognizing the title of Sistrunk, or looking to her own interests, brought an action to recover dower, and succeeded in getting that 158½ acres set apart to her. That meant that she had a life-time estate in this land. She had nothing more than a life time estate. Shortly after getting possession of the 300 acres, Sistrunk sold off 221 acres to Zeigler, and there is no question as to his title; so far as Zeigler is concerned, he is fixed. Now, the question is as to this 158½ acres. Sistrunk claims to have been in possession of it under the sheriff's deed. But the widow has been in possession of it. There may have been a little interval when she was not in possession. You will determine that from the testimony; at all events, Sistrunk was not in possession any great length of time. Now, Sistrunk dies—his estate is partitioned and Amaker buys. Twenty-three years have elapsed since this deed was made. The mother holds the land as against Amaker, and her daughter holds it now. Now, can she plead the statute of limitations against Amaker? I am constrained to tell you

that, in my opinion, she can ; and I instruct you, that when this voluntary deed was put on record, it was constructive notice of the claim of this trustee for the benefit of the *cestui que trust* under this deed ; and if Sistrunk intended to get rid of this deed, so far as these remaindermen were concerned, it was competent for him to have brought action on the equity side of the court, to set aside this conveyance and to have had that matter adjusted.

Until this conveyance is adjudged to be fraudulent and void by a court of competent jurisdiction, it stands good.. There must be facts brought to bear upon it to enable the court to determine whether it is fraudulent.    It stands as a deed, until by proceedings in a proper court of competent jurisdiction it is declared to be fraudulent.    Sistrunk has never taken any such steps.    No one under Sistrunk, until Amaker comes now, has ever taken such steps, and now he is encountered by this title.    The statute of limitation is pleaded.    Twenty-three years have elapsed in all, and Sistrunk, so far as the present defendant is concerned, was debarred from claiming that this deed was fraudulent.    Amaker claims under Sistrunk's title, and therefore he is debarred.    If the date of the deed is genuine, and the dates of when the parties died have been correctly testified to, then the present defendant has a complete defence against the claim of fraud.    Now, if these facts are established to your satisfaction, six years under our present law is a complete bar to a claim of fraud, and when this deed was made, four years was a bar to the allegation of fraud.

It is necessary that I should say something to you in regard to the questions made about this deed not being recorded in the secretary of State's office, not being constructive notice, &c.    I do not look upon this paper as a marriage settlement, or in the nature of a marriage settlement.    It was a deed made to his wife and children long after his marriage, and could have no reference to marriage as a consideration at all.    It is a plain voluntary donation by a father to his wife and children, and I do not think it was required to be recorded in the secretary of State's office. I think that the recording here was constructive notice to the world.    If it was recorded here in the register's office in Orangeburg, it was constructive notice sufficient to put all parties in

interest on their guard of the fact of the conveyance and its nature. I believe I can give you no further instruction in regard to this matter.

If you conclude that Amaker has connected himself with Inabnet by proper deed, then here is an older title from Absalom Inabnet, which must prevail until it is ·set aside. The only plea upon which it is sought to set it aside is, that it was a fraud against Inabnet's creditors. I instruct you that, after six years after Sistrunk got title, he was barred and deprived of assailing the deed on that ground, and that Amaker, with the constructive notice of this deed, is affected by the neglect of Sistrunk, under whom he claims; and that if more than six years have elapsed from the time this deed was put on record to the time that he instituted this suit, he is debarred from assailing the deed on the ground of fraud against existing creditors. And this deed being assailed in this way, the defendant has a superior title and the defendant must prevail. If you come to the conclusion that the deed is fraudulent and void as to the existing creditors, and that the plaintiff is not debarred by the statute of limitations from assailing it, you will disregard this deed and give the land to the plaintiff.

The plaintiff appealed, alleging error to the judge in these portions of his charge.

*Messrs. Izlar & Glaze*, for appellant.

*Messrs. Glover & Bowman*, contra.

April 21, 1890.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   I understand it to be well settled that an existing creditor who wishes to subject property to the payment of his debt, which has been conveyed by his debtor by a voluntary deed to another, before judgment obtained, has two remedies, to either of which he may resort, to wit: he may disregard the conveyance as fraudulent and void, and proceed to sell the property under his execution, leaving the validity of the deed to be determined in an action by the purchaser at such sale

to recover possession of the land; or he may, by an action on the equity side of the court, have the deed set aside on the ground of fraud, and the land conveyed by it subjected to the payment of his debt. If he resorted to the latter mode of relief, then it was settled in the Court of Equity that he must commence his action within four years after the discovery of the fraud, or such action would be barred; and this equity rule is now made statutory by section 112 of the Code, the time being enlarged from four to six years.

But I do not see how this doctrine can be made applicable in a case where the creditor resorts to the former mode of relief from the fraud. In such a case the creditor brings no action to set aside the deed, and there is nothing to which the plea of the statute of limitations can be made applicable. That statute confers no rights except simply that of immunity from suit, and, therefore, until some action is brought against one who seeks to avail himself of the benefits of the statute, there is no room for its application. For example, where an action is brought on a note after the time limited for the commencement of such action, while the statute affords perfect immunity from such action, it does not operate as payment of the debt evidenced by such note, and if the holder thereof can obtain payment in any other way than by resort to an action, he has the right to do so. See *Wilson* v. *Kelly,* 16 S. C., 216. The statute of limitations is nothing but a statute of repose, as it has been called, founded on motives of public policy; that it is best for the general welfare that after the lapse of a prescribed time, fixed arbitrarily, a person shall not be allowed to enforce a claim by the use of the legal machinery of the courts; that is, the doors of the court are no longer open to him for the enforcement of a claim which he has neglected to assert within the prescribed time.

Now, in this case, treating it as though the action was brought by Sistrunk, in whose shoes the real plaintiff stands, where has there been any delay on the part of the creditor in asserting his rights? The voluntary deed was made in November, 1866, Sistrunk recovered his judgment on a cause of action arising prior to the deed. in August, 1867, the land was levied on and sold by the sheriff in January, 1868, and possession was surrendered

to the purchaser at such sale, Sistrunk, of the entire tract of 300 acres. By proceeding instituted in March, 1869, that portion of the tract (158 acres) now in dispute was laid off to the widow of the grantor as her dower, and she held possession until her death in March, 1886, and within about a year thereafter this action was commenced. From this statement it appears that the creditor proceeded promptly, after obtaining his judgment, to subject the land to the payment of his debt, in one of the modes permitted by law, to wit, a sale under his judgment, notwithstanding the prior voluntary deed, and having thus acquired possession, retained the same until required to surrender the portion now in dispute temporarily to the superior claim of dower, and very soon after that estate terminated by the death of the widow, this action was commenced to regain possession of that part of the land which had thus been temporarily surrendered under the superior claim of dower. There never was, therefore, any occasion for the creditor to bring his action to set aside the deed for fraud (and such is not the nature of the present action), for he had availed himself of the other remedy afforded by law, by selling the land under his execution as the property of the grantor, notwithstanding the prior execution of the voluntary deed.

This being an action to recover possession of real estate, and not an action to set aside a deed for fraud, I am unable to see how the plea of the statute of limitations can be applied; for certainly the right of action did not arise until the estate of dower fell in by the death of the widow, and the action was commenced within a year after that event occurred. The plea of the statute, as it is called (improperly, as I think, for such a plea must be directed to the cause of action set forth in the complaint), is not directed to the plaintiff's cause of action, but is interposed as a protection against an attack made by the plaintiff upon the defence set up by defendants. The plaintiff having made out a *prima facie* title, as is shown by the refusal of the motion for a nonsuit, to which no exception was taken, the defendants undertook to show a superior title in themselves under the deed in question, and surely the plaintiff was entitled to show any defect in that deed which would render it insufficient to vest title in the defendants, either by showing that it was not under seal, or not exe-

cuted in the presence of two subscribing witnesses, or that the grantor was *non compos*, or that it was not recorded. If so, why may it not also be shown that it was void for fraud ?

I do not understand that it ever was the rule that a deed or other instrument could not be attacked for fraud after the lapse of the prescribed time in any way, but only that it could not be attacked by an action instituted for that purpose. I can very well understand how the law, from considerations of public policy, may forbid one from invoking its aid by bringing an action to set aside a deed for fraud after the time limited for the purpose; but I am unable to understand upon what principle, either of law, equity, or good morals, one who has made out a *prima facie* case for the relief he demands, can be forbidden from showing that the defence set up against his claim is founded in fraud simply because such fraud had been committed so long ago as to bar an action brought to obtain relief from such fraud; and I do not think any case can be found which would sanction such a doctrine.

It seems to me that any other view would render the conceded right of the creditor to disregard the fraudulent deed and sell the land under his execution absolutely nugatory. For, in such a case, all that the grantee under the fraudulent deed would have to do would be to wait until the expiration of six years, and then assert his claim under such deed, when, under the view contended for, it would be shielded from attack on the ground of fraud, by the statute of limitations. If it should be said that the creditor, after purchasing the land under his execution, could protect himself by bringing an action to remove a cloud from his title, by having the deed declared void for fraud, this is only saying that one of the conceded modes of relief which a creditor has cannot be made effectual without resorting also to the aid of the other mode of relief; which practically amounts to saying that the *only* effectual mode of relief is by an action to set aside the deed for fraud, and that the other mode is but a delusion.

I agree with the Chief Justice, that the deed cannot be regarded as a marriage settlement, because it does not appear to have been made in pursuance of any arrangement entered into prior

to the marriage, or that it was in any way founded upon or con-
nected with the contract of marriage.

As to the position taken by counsel for respondents that the
judgment below may be sustained upon other grounds, even if
there was error in charging the jury with respect to the statute
of limitations, it is only necessary to say that this cannot be done
in a case tried by a jury, for the reasons stated in *Bonham* v.
*Bishop*, 23 S. C., at page 105.

The judgment of this court is, that the judgment of the Cir-
cuit Court be reversed, and that the case be remanded to that
court for a new trial.

MR. JUSTICE McGOWAN.   I concur. It is clear that the plain-
tiff could not sue for the land during the life of Mrs. Inabnet, for
she held it by a legal title—her dower right. Within a year
after her death the plaintiff did sue for the land; but it appears
that, in the meantime, other parties took possession, claiming
under another and different right, which the widow, as to herself,
disclaimed when she took dower. It seems to me that no action
for the land accrued to the plaintiff, in respect to this new claim,
until it was set up by the defendants after the death of the widow.
Until the new claim was asserted, by taking possession under it,
no right of action for the land existed in the plaintiff which re-
quired him to sue the defendants.

MR. CHIEF JUSTICE SIMPSON, *dissenting* [omitting his state-
ment, already given]. The first and second propositions above
[*i. e.*, as stated by counsel for appellant] may be affirmed with-
out argument, upon the general principle that fraud will vitiate
anything. In both of said propositions it is assumed and con-
ceded that the deed is voluntary and in fraud of existing credit-
ors. Such a deed is, of course, void, and a purchaser at sheriff's
sale of land conveyed in such deed gets a superior title to such
deed. This is unquestionably sound legal doctrine, as well as
good morals. But while this is true, yet there is another doc-
trine which holds that a party may lose a perfect title by delay
in asserting it. Statutes of limitation, for the sake of peace and
repose, have been adopted and enforced in almost every country;

certainly everywhere where regular judicial systems have been built up, and justice is administered under settled principles of law.  Admitting here that the voluntary deed in question was fraudulent as to the existing creditors of Absalom Inabnet, and that at the sale Sistrunk obtained a perfect title, if the court could now get at these facts ; but the question is, can the court now get at these facts ?  It is established doctrine of equity that, in order to set aside a fraudulent deed on the ground of fraud, it must be assailed within six years from the discovery of the fraud. It cannot be attacked afterwards, if, during this time, there is a party who can sue, and a party who can be sued.  Whatever may be the real merits of the case and the truth of the alleged facts, this principle closes the door, and forbids the court from going back behind the statutory period, so that in such case it is not competent for the assailant to prove the fraud upon which he relies ; and hence, in the absence of such testimony, the deed stands before the court unaffected, and must take rank from its date, having priority to all subsequent conveyances.

Suppose that in this case Sistrunk was alive, and had instituted an action on the equity side of the court to vacate this deed for fraud, at the date of the action below—15 years or more after his purchase at sheriff's sale—could the court have entertained the action for a moment?  We think not.  What is the difference between such a case and the one below ?  True, the plaintiff is not Sistrunk, but he stands in Sistrunk's shoes.  True, too, the action below was not in terms to vacate defendant's deed, but still plaintiff's claim depends upon vacating that deed.  It is set up by the defendants in opposition to plaintiff's deed, and the plaintiff attacks it on the ground of fraud, and he must sustain his attack, or his claim fails.  In other words, he must have it adjudicated fraudulent in order to succeed in his action for the recovery of the land.  This is nothing more than an effort to set aside said deed for fraud, which, as we have seen, cannot be done after the lapse of the statutory period ; certainly not in a direct proceeding to that end, much less so in a collateral attack.  The fact that Bennett yielded possession to Sistrunk at the sheriff's sale, and that the widow of A. Inabnet, the life tenant *cestui que trust* under that deed, came in and claimed dower, was well cal-

culated to lull Sistrunk into security and mislead him, but we do not see how this could bind the present defendant, a remainderman under that deed. Her active rights had not attached, and did not attach, until upon the death of her mother in 1886, when she immediately took possession. Under these views we see no error in the charge of his honor on the subject of fraud. See the following cases: *Eigleberger* v. *Kibler*, 1 Hill Ch., 113; *Prescott* v. *Hubbell*, *Ibid.*, 210; *Furr* v. *Farr*, *Ibid.*, 387; *Shannon* v. *White*, 6 Rich. Eq , 96; *Godbold* v. *Lambert*, 8 *Id.*, 162–164; *Beck, Ex'or*, v. *Searson*, *Ibid.*, 132; *Cox* v. *Cox*, 6 *Id.*, 275.

Nor do we think there was error in his ruling as to the necessity of this deed being recorded in the office of the secretary of State; nor was his charge, when taken as a whole, vulnerable, as complained in the last exception, "in that it charged on the facts," in violation of article IV., § 26, of the Constitution.

Judgment reversed.