## 8795

## CANNON v. BAKER ET AL.

### (81 S. E. 478.)

WILLS. CONSTRUCTION. ESTATES DEVISED. DEEDS. FRAUD.

1. Testator devised land to a niece and nephews, and gave to two brothers and a sister "and to the male issue of their bodies" his other lands, and declared that the other lands should not be sold out .of the family, but permitted a sale by a devisee to either of the other devisees at a specified sum, and a devisee purchasing the share of another devisee should take subject to the same limitations, and provided that the daughters of the brothers should receive at the death of the brothers, shares out of the personal estate, to equalize them for the land devised to the male issue of the brothers. *Held,* that the sister took a life estate, with remainder in fee to her male issue.

2. Where the Court, in stating the issues, misstates them, a party must call its attention thereto at the time, or he cannot complain.

3. Fraud inducing a conveyance may be set up, not only against the one who perpetrated the fraud, but against one claiming under the conveyance.

4. Where a devisee in remainder in fee accepted deeds from the life tenant, or from a grantee of the life tenant, which conveyed to him an estate for life, with remainder to his wife for life, with remainder to their issue, subject to the provision that all interest of any beneficiary should be invalidated by any threatened levy to satisfy any debt against any of the beneficiaries, the question whether the devisee claimed under the will or under the deeds was one of fact for the jury.

5. The statute limiting the time in which an action may be brought for fraud does not limit the time in which one may defend against a deed procured by fraud.

6. Where the issue was whether a wife derived a life estate under a deed to her husband for life, with remainder to her for life, with remainder over to their issue, the error in a charge that the wife did not obtain a life estate until after her husband's death, and that the undisputed proof was that she died first, because on the facts in violation of. Const., art. 5, sec. 26, was not prejudicial.

7. Where a party introduced parol evidence to show that decedent did not claim the land in controversy after an attempted levy, a statement made by decedent that he claimed the land under a will devising the same to him in fee after the termination of a life estate, made at the time an instrument admitted in evidence was probated by him and in explanation of it, was admissible, as against the objection that it was self-serving.

8. Where there was some evidence to sustain the verdict, it was not error to refuse a new trial, on the ground of absence of testimony to sustain it.

9. A party requesting a charge on an issue cannot complain of the absence of any evidence on the issue.

10. Refusal of a new trial on the ground of the insufficiency of the evidence will not be disturbed on appeal, in the absence of any abuse of discretion.

11. One who enters under a deed with knowledge that the property had been procured by the fraud of his grantor is not estopped from acquiring good title, unless he has gained an unconscionable advantage by reason of the fraudulent deed.

12. To constitute an equitable estoppel, there must have been conduct, acts, language, or silence amounting to a representation or a concealment of material facts, and the party claiming the estoppel must have acted on it, and thereby changed his position for the worse.

Before SPAIN, J., Aiken, April, 1913.    Affirmed.

Action by W. S. Cannon against Elizabeth L. Baker and others, to recover possession of an undivided interest in real property, and partition thereof. Issue of title was submitted to a jury, and resulted in a verdict for the defendant. From the judgment entered thereon plaintiff appeals. The facts are stated in the opinion of the Court.

*Messrs. Croft & Croft,* for the appellant, cite: *Devisees under will of Andrew Dunbar took fees conditional: Ambiguous clauses cannot control former express gift:* 120 Am. St. Rep. 734; 32 Am. St. Rep. 167. *The whole will must be construed together:* 1 DeS. 135; Bailey Eq. 9; 26 S. C. 454; 3 Jarman, Wills, 704-707; 16 S. C. 220. *According to rules of law:* 9 Am. St. Rep. 32; 3 Jarman, Wills, 703-707; 1 McC. Ch. 72. *Where there is doubt as to quantity of estate:* 3 Jarman, Wills, 704-707; 1 Rich. Eq. 401; 16 S. C. 293, 296, 297; 52 S. C. 558. *Attempted restraint on alienation:* 4 ed. Washburn Real Property 23; 15 Ga. 103; 20 Barb. 455; 38 Me. 18; 4 Kent. 126; 25 Am. St. Rep. 584; 40 Cyc. 1714. *Expression of wish against alienation*

*not expression of will:* 2 Hill Ch. 490; 3 Strob. Eq. 225; 12 Cyc. 404. *Presumption that estate was absolute rather than qualified:* 3 Strob. Eq. 211; 114 Am. St. Rep. 14. *Implication to cut down estate first granted neither necessary nor mandatory:* 77 S. C. 458, 459; 1 Mc. Ch. 70, 71, 72, 77, 79, 81, 86, 87; 1 Rich. Eq. 401; 3 Strob. Eq. 215; 114 Am. St. Rep. 148; 87 S. C. 60; 93 S. C. 215; 105 Am. St. Rep. 472; 20 Am. St. Rep. 418; 110 Am. St. Rep. 517; 2 Speer's 794; 29 S. C. 470; 3 Pom. Eq. Juris. 1014; 108 U. S. 725; 5 S. C. 470; Story's Eq. 1069; 120 Am. St. Rep. 734; 138 Am. St. Rep. 217; 2 McC. Ch. 307; Am. St. Rep. 32; 83 Am. Dec. 573; 100 Am. Dec. 562; 37 Am. Dec. 523; 97 Am. St. Rep. 744; 47 S. C. 296. *Fraud in conveyance:* 20 Cyc. 42; 90 S. C. 214; 16 S. C. 334; 1 Bailey Eq. 221; 19 S. C. 402, 403; Kerr on Fraud & Mistake 48. *Right to attack deed for fraud barred by statute:* 16 S. C. 216; 33 S. C. 35; 38 S. C. 499, 500. *Estoppel:* Kerr on Fraud & Mistake 296-299; 72 S. C. 271.

*Messrs. Henderson,* for respondent, cite: *Context shows issue used as term of purchase:* 59 S. C. 137; 11 S. C. 359; 1 Summer 214-247; 7 Rich. Eq. 407; 91 S. C. 303; 83 S. C. 269; 67 S. C. 135, 307; 86 S. C. 260, 338, 460. *Estoppel in pais legal issue triable by jury:* 89 S. C. 391-394. *Charge on estoppel:* 13 S. C. 370. *Adverse possession on issue of title:* 59 S. C. 449. *Delivery of deed issue for jury:* 89 S. C. 351; 85 S. C. 386. *Charge on fraud as affecting validity of deed:* 82 S. C. 206; 91 S. C. 490. *Declarations of deceased party in explanation of this act shown by opposite party in interest:* 95 S. C. 138; 36 S. C. 598; 18 S. C. 194.

April 20, 1914.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

Andrew Dunbar made the following will:

"State of South Carolina, Barnwell District.

In the name of God. Amen.

I, Andrew Dunbar, of said State and district, of feeble body but of sound mind and disposing memory, do make, ordain and publish this, my last will and testament:

First. I will and desire all my just debts be paid.

Secondly. I will and bequeath unto my niece, Caroline F. Prentis, and nephews, Frankline I. Boyd, Robert D. Boyd, Reuben A. Boyd and Jefferson W. Boyd, my tract of land known as the mill land, to be equally divided to them and their heirs, share and share alike.

Thirdly. I will and bequeath unto my brothers, James and Robert Dunbar, and my sister, Mary Cannon, and to the male issue of their bodies, all my other lands, including the homestead, and lands adjoining, to be equally divided between them, share and share alike. These lands I desire not to be sold out of the family, and have, therefore, valued them at the sum of fifteen thousand dollars, a share therefore being five thousand dollars; if, therefore, either of my brothers or my sister should at any time become dissatisfied with the part he or she may have allotted to him or her, and prefer to have five thousand dollars than his or her interest in said land, it is my will that he or she being thus dissatisfied and preferring the money, shall, on receipt of said sum of five thousand dollars, forfeit and lose all his or her interest and estate of, in and to all and singular the said land, which interest and estate shall accrue to the party paying the money, and shall vest solely in said party, subject, however, to the same limitations and restrictions as is in the first clause; and I further will and desire that my nieces, the daughters of my brothers, James and Robert, shall receive at the death of their respective fathers, shares out of my personal estate sufficient to equalize them for the land hereby and herein willed and bequeathed to the male issue of my said brothers, the daughters of each of my said brothers receiving their portions from the respective share of their

deceased father; and I further will and bequeath unto my said brothers, James and Robert, and my sister, Mary, and their heirs, all the rest and residue of my estate of whatever character or kind, to be equally divided between them, share and share alike, subject, however, to the limitations and restrictions above, and subject, furthermore, to limitations and bequests hereafter to be made.

Fourthly. I will and bequeath one thousand dollars to be retained by my executors, to be spent in placing or having made a good and substantial iron railing around the grave-yard, and if this sum is not sufficient, I will and desire the work to be done and each of my said brothers and sister to bear equal portions of the excess.

Fifthly. I will and bequeath unto my kinswoman, Rebecca Wimberly, one thousand dollars.

Sixthly. It is my will and desire that my executors shall take care of my faithful servants, Tony and Butty, and to their care I commend them.

Seventhly, and lastly. I hereby nominate and appoint my brothers, James and Robert Dunbar, and as my Robert L. and Elmore Dunbar, executors to this last will and testament.

In witness whereof I have hereunto set my hand and the seal this the 23d day of March, in the year of our Lord one thousand eight hundred and sixty-six.

(Signed)   ANDREW DUNBAR.   (L. S.)

Signed and sealed in the presence of, as witnesses as below, and in the presence of each other, the day and date above written.

James I. Wilson,
Thos. W. Chanbers,
W. L. Dixon."

The first question in this case is what estate did Mrs. Mary Cannon take? Respondent claims that Mrs. Cannon took a life estate with remainder to her male issue, to wit,

her two sons, Dr. William S. Cannon and Robert W. Cannon. The appellant claims that Mrs. Cannon took a conditional fee.

The solution of the question is not without its difficulties. Not satisfied with the perplexing questions inherited with the land, some one (it is a question who) has had executed and put on record several deeds to complete the confusion as far as possible. On July 26th, 1875, Mrs. Mary Cannon conveyed to Robert Dunbar a part (450 acres) of the land she had received from Andrew Dunbar, and on the same day Robert Dunbar conveyed to Dr. William S. Cannon 175 acres of the 450 acres that day conveyed to him. That deed was to Dr. Cannon for life, then to his wife, Mary H., for life, with remainder to their issue. On that same day, 26th July, 1875, Mrs. Mary Cannon conveyed to Dr. W. S. Cannon the home place, said to contain twenty acres. This deed was to him for life, then to his wife, Mary H., for life, with remainder to their issue. Mrs. Mary Cannon and Mrs. Mary H. Cannon both died. Dr. William S. Cannon is the father of the parties to these proceedings. All the children moved away and married, except Miss Lizzie Cannon, who stayed at home with her father. Dr. Cannon was a physician of large practice, and seems to have been unskilled in business affairs, and "Miss Lizzie" managed the farm and household affairs. While things were in that condition, "Miss Lizzie's" brothers and sisters executed a deed of their interests in these two places to her, the interests conveyed to terminate on her death or marriage. Subsequently, Dr. Cannon conveyed to "Miss Lizzie" his interest in the land. Dr. Cannon then died, and "Miss Lizzie" married Mr. Baker. The deeds from Mrs. Mary Cannon and Robert Dunbar both contained this provision: *"Provided, nevertheless,* That if at any time the said tract of land be threatened with levy or seizure by process of law to satisfy any debt or claim against any of the beneficiaries above named, who are at the time in lifetime possession thereof

(that is, if said levy is actually at the point of being made), then, and in that case, I desire that all interest and ownership whatsoever held by said beneficiary be invalidated and cease to exist, the same as if said incumbent beneficiary were dead, and all right, title and claim whatsoever to pass into the possession of the beneficiary next in order of above named succession."

The records of the clerk's and sheriff's office show a judgment and execution against Dr. Cannon not marked satisfied. There was evidence to show that the sheriff went down to Dr. Cannon's, but did not levy, and that afterwards Dr. Cannon said that his wife, Mrs. Mary H. Cannon, owned the property. The plaintiff and the defendants in like interest (all except Mrs. Baker) claim that they are tenants in common, and ask partition. Mrs. Baker claims to own the whole land in fee.

This case was tried on an issue of title and the jury found for Mrs. Baker, the respondent.

The appellants claim:

a. That under the will of Andrew Dunbar, Mrs. Mary Cannon took a conditional fee and, there being "male issue," the condition was fulfilled and her deed conveyed the fee and cut out the "male issue" as such, and that Dr. William S. Cannon and his grantee can only claim under the deeds of Mrs. Mary Cannon, and under those deeds Dr. Cannon took only a life estate at best, and the life estate was destroyed by the levy under the execution, and that they, as succeeding beneficiaries under those deeds, are tenants in common with Mrs. Baker, the respondent.

b. That even if Mrs. Mary Cannon took a life estate under the will of Andrew Dunbar, yet, inasmuch as Dr. Cannon accepted these deeds and saved his property from the sheriff by claiming under them, that he and his grantee are estopped now to disclaim these deeds and are bound by the life estate and forfeiture thereunder.

c. That the respondent accepted a deed from them, which provided that the land should revert to them upon her death or marriage. That she is now married, and she is estopped by the acceptance of that deed to deny the forfeiture and claim title in herself.

The respondent claims:

a. That under the will of Andrew Dunbar, Mrs. Mary Cannon took a life estate only, with remainder in fee to Dr. Cannon and R. W. Cannon, as purchasers, and the deed of Dr. Cannon to the respondent conveyed a fee to her.

b. That the deeds of Mrs. Mary Cannon to Robert Dunbar and Dr. Cannon were fraudulent and void, but at most conveyed and could convey only her life estate.

c. That the respondent is not estopped by these deeds to set up fraud or to disavow them because Dr. Cannon did not accept them, or claim under them, and the appellants lost no right under them and lost no right by reason of them.

There are sixteen exceptions, but appellants thus state their case:

1. "The first, second and seventh exceptions raise the same questions as to the construction of the will of Andrew Dunbar, so they will be considered together. The error charged is that the Circuit Judge instructed the jury that under the terms of the will of Andrew Dunbar, Mary Cannon, the elder, took a life estate, with remainder over to her male issue, as purchasers and not by descent."

The question here is between a conditional fee and a life estate. The words, "To Mary Cannon and her male issue," are apt words to create a conditional fee, but, like all expressions of this sort, they must be controlled by the other portions of the will. The will shows a desire to have the property kept in the family. There being no disposition beyond the male issue, the male issue, under the statute, would take a fee. "Mrs. Cannon may sell, but by a sale she shall forfeit and lose all her interest and estate," and the purchaser takes the land, "subject, however, to the

same limitations and restrictions as is in the first clause.". The purchaser is to take, not subject to similar, but the same limitations. It may be said it would be monstrous to hold that the purchaser was required to pay full value, to wit, five thousand dollars, for land encumbered with a remainder in favor of the male issue of Mrs. Cannon. It is not altogether fair to require a sale for a full price when there were any restrictions whatever. The difference is in degree not in kind. The will shows that there was male issue at the time of the making of the will. The so-called limitation was, therefore, no limitation, and that provision, a subsequent provision, would be treated as meaningless. It may be that the word "same" might be construed to mean "similar," if there was nothing else. The will does not stop there. It goes on to provide that his "nieces, the daughters of my brothers, James and Robert, shall receive, at the death of their respective fathers, shares out of my personal estate sufficient to equalize them for the land hereby and herein willed and bequeathed to the male issue of my said brothers." If this was a conditional fee, then the brothers took nothing. See *Izard* v. *Izard,* 8 S. C. (Bailey's) Equity 234. The words "male issue" merely defined the nature of the estate given to Mrs. Cannon, like the word "heirs" in a conveyance in fee. Mrs. Cannon took a life estate, with remainder in fee to Dr. Cannon and R. W. Cannon, her male issue in fee.

These exceptions are overruled.

2. "Exceptions three and four can be considered together, as they relate to the charge on estoppel. Succinctly, the error charged is that the Circuit Judge cited wrong issues to the jury, which were inapplicable, and, in fact, misled the jury, especially for the reason that, in the plaintiff's third exception, no contention was made that those facts constitute estoppel. And, further, that by selecting particular pieces of the evidence he thereby limited all evidence as to estoppel on behalf of the plaintiff; whereas, he should have

left it to the jury on the whole case from all the facts and not those alone selected to determine the question of estoppel."

These exceptions cannot be sustained.   His Honor was simply stating the issues and the basis of the estoppel.

2   If he misstated the issue, he should have had his attention called to his mistake at the time.

3.  "The ninth exception charges error in submitting to the jury the question of fraud in the deed to the thirty-acre tract.   This land was derived from Mary Cannon as a common source, and does not pass under the will of Andrew Dunbar.   The Circuit Judge's charge to 'bear in mind' that the defendant attacks this deed on the ground of fraud, sent the question to the jury to be determined under the ruling as charged previously, thereby making all the requests on fraud applicable to the same.   It was improper, irrelevant and inapplicable, and could only mislead the jury, as it was impossible, from the facts in the case, for a question of fraud to arise.   The broad principle upon which we rely is, that no person can set up fraud except he who has suffered an injury; and, secondly, he can only set it up against those persons who were parties to the transaction."

Fraud may be set up to prevent an injury as well as to remedy the evil resulting from fraud.   Fraud may be set up not only against those who perpetrate a fraud, but against those who claim the benefit of the fraudulent convey-

3, 4  ance.   Here the claim is that Dr. Cannon did not claim under these deeds, but under the will.   The effect of the deeds was to cut down his estate from a fee to a life estate, and even that life estate was liable to be defeated by a levy under execution.   It would be dangerous to allow a grantor to make a deed in fee and then destroy the fee by making another deed reducing the estate to a life estate or term of years.   Whether Dr. Cannon claimed under these deeds or not, was a quesion of fact properly submitted to the jury.

4. "By the twelfth exception we contend that if Elizabeth Baker, in 1897, when she took the deed, under which she now claims, from her father, knew that the deed of 1875 was a fraud, she would be debarred in six years after such knowledge from setting up that defense against the claimants under the former deed.    The cases of *Wilson* v. *Kelly,* 16 S. C. 216, and *Amaker* v. *New,* 33 S. C. 35, 11 S. E. 386, hold a principle consistent with this proposition of law, as will be seen in *Jackson* v. *Plyler,* 38 S. C. 499, 500, 17 S. E. 255."

In *Jackson* v. *Plyler,* 38 S. C. 499, 500, 17 S. E. 255, there was a mere suggestion that it might be well to object to evidence of fraud not discovered within the statutory period.

*Amaker* v. *New,* 33 S. C. 34, 11 S. E. 386, does not sustain appellant.    The statute limits the time in which an action may be brought, but does not limit the time in which fraud may be available as a defense.    Dr. Cannon and his grantee could not have brought an action after six years from the time of the discovery of the fraud, but there is no limit to the time in which one may defend himself from a fraudulent deed.

5. Exception XIII :

"Because his Honor erred in charging in relation to the thirty-acre tract of land, as follows :

'Yes, sir; that is right; Mrs. Cannon never got a life estate until after her husband's death, and the undisputed proof is that she died first.'

"(a) Because said charge was on the facts, in violation of section 26 of article V of the Constitution of South Carolina, one of the issues being that Mrs. Cannon derived a life estate under said deed at the time the levy and execution against said property was made in 1888, and his Honor, therefore, erred in stating to the jury that Mrs. Cannon never got a life estate until after her husband's death."

Even if this statement of an undisputed fact were error, appellant can not complain, as the only effect was to destroy

the claim of adverse possession under the deeds of Mrs. Cannon. His Honor said a "man can't hold against his wife." Mrs. Cannon died in 1904. There could be, therefore, no adverse holding until after Mrs. Cannon's death, and she had not been dead ten years before the commencement of this action; therefore, no title by adverse possession for any claim under the deeds.

6. Exception XIV:

"Because his Honor erred in his ruling in allowing the witness, C. J. Baker, to testify as follows:

" 'Q. You carried a paper to Dr. Cannon to be probated? A. I did; yes, sir. Q. What did he do? A. He was reluctant about signing it at first, and finally said: "Yes; I will sign it; I feel that my mother only had a life estate in the property." He said he claimed it under the will of Andrew Dunbar. I talked to him twenty-five or thirty minutes. The clause of "male issue" was discussed. He said he was one of the "male issue" of Andrew Dunbar.'

"(a) The error being that it was incompetent to introduce in evidence self-serving declarations made by W. S. Cannon, deceased, in his own favor and in favor of his privies."

This exception cannot be sustained.

The appellant had introduced parol evidence tending to show that after the attempted levy Dr. Cannon did not claim the land. This statement was in direct reply to that evidence, and, further, was a statement made at the time of executing the probate and in explanation of it.

7. Exception XV:

"Because his Honor, the presiding Judge, erred in refusing the motion of the plaintiff for a new trial and to set aside the verdict as to the thirty-acre tract of land, on the following ground:

"(a) Because there is absolutely no testimony whatever to sustain the plea of fraud as to the title of Mary Cannon conveying the thirty-acre tract of land to W. S. Cannon.

"(b) Because there is absolutely no testimony to sustain the plea of title by adverse possession raised by the defendant-respondent.

"(c) That the refusal of his Honor, the presiding Judge, to grant a new trial, or set aside the said verdict, on the grounds aforesaid, was an abuse of discretion."

(a) There was some evidence that Mrs. Cannon was too ill to know what she was doing when she made her deeds. (b) Appellants asked for a charge on adverse possession and cannot complain. (c) We see no abuse of discretion.

8. Exception XVI:

"Because his Honor erred in refusing to charge the plaintiff's fourteenth request, which is as follows:

" 'I further charge the jury that if they find from the evidence that W. S. Cannon took possession and exercised acts of ownership over the property in dispute under the claim of title through the Robert Dunbar deed, with knowledge that he had gotten the deed by fraud, then he would be estopped from denying the validity of the same, and he, as well as his privies claiming through him, would be bound by the same.'

"Said request being a sound proposition of law."

This could not have been charged, because it ignored the possibility that Dr. Cannon might subsequently acquire good title. If Dr. Cannon entered under a void title, that did not preclude him from ever acquiring good title and standing upon his good title, unless "the moral policy of the law" required him to surrender the advantage gained by reason of the fraudulent deed. *Whitmire* v. *Wright,* 22 S. C. 453. Here there was no advantage to him from the deeds attacked. From all that appeared in the record, the result

of the deeds was a loss to Dr. Cannon and he gained no unconscionable advantage which he should surrender.

It is further said that the respondent is estopped by reason of the deed she accepted from her sisters and brothers. Estoppel has been called an odious doctrine. It is not, estoppel from conduct is exquisite justice. So far as it affects this case, two things must appear: 1. There must be some conduct, acts, language or silence amounting to a representation or a concealment of material facts. 2. The party claiming the benefit must in fact have acted upon it in such a manner as to change his position for the worse. (See 2 Pomeroy's Equity Jurisprudence, section 805.) There is evidence in the record that might sustain the first requisite, but there is none as to the second. If the deeds of Mrs. Cannon, Robert Dunbar and the appellants had not been made, the appellants would have had no interest in the land, except that Robert Dunbar surrendered the life estate of Mrs. Cannon conveyed to him by her deed. Neither Robert Dunbar nor those claiming under his life estate are before the Court. If Boyd, the plaintiff in execution, had purchased the estate from those mentioned in the deeds of Robert Dunbar and Mrs. Cannon, after Dr. Cannon declared that his interest had terminated (if he did so declare), and relied on his statement in making the purchase, then Dr. Cannon and the respondent claiming under him would be estopped to dispute the title so purchased. So, too, if the appellants, relying on any statements or conduct of Dr. Cannon, had relinquished any claim or right they would have had, and of which they were deprived by reason of their deed to the respondent, they would have been in a position to claim and receive the benefit of estoppel. We have seen, however, that Dr. Cannon owned the land in fee and had the right to convey the fee and did convey the fee to the respondent, and she is not estopped so far as the parties to this suit are concerned.

The judgment of this Court is, that the judgment appealed from be, and hereby is, affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. ASSOCIATE JUSTICES HYDRICK and WATTS concur in the result.

MR. JUSTICE GAGE did not sit in this case.