14144

FIDELITY-BANKERS' TRUST CO. v. LITTLE *ET AL*

(181 S. E., 913)

*Messrs. Hall, Vassy & Hall,* for appellants,

136

*Messrs. Wolfe & Fort,* for respondent, 

October 7, 1935.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

The plaintiff, Fidelity-Bankers Trust Company, a corporation of the State of Tennessee, commenced this action against the defendants, Dever Little and Maud S. Little, in the Court of Common Pleas for Cherokee County, March 12, 1934. The purpose of the action is to recover against the defendants, who are residents of Cherokee County, this State, judgment in the sum of $11,729.30, alleged to be the balance due on a note of the defendants executed to the plaintiff, June 30, 1930, and secured by a trust deed or mortgage executed by the defendants to M. D. Arnold, Jr., and J. Harry Price, as trustees, covering certain real estate situate in the State of Tennessee.

As stated in the agreed statement disclosed by the transcript of record, the answer alleged, among other things, "that because of the illness and incapacity of Dever Little, he was unable to attend to his business affairs, that in 1932, the defendants assigned all rents from the building then occupied by Sterchi Brothers, at a rental of $350.00 per month, to plaintiff to be applied to the debt secured, and also that they turned over the entire management and control of the

said premises to plaintiff, with authority to lease same, collect rents, etc., and set up a counterclaim for loss sustained by the negligence of the plaintiff," etc. It is also the contention of the defendants, as set forth in their said answer, "that the plaintiff had caused the building and lot to be sold and bid in by it for $12,000.00, at less than its fair value, and that if plaintiff should be required to account for a fair value of the property, the entire debt would be wiped out and discharged," etc.

In the plaintiff's reply the defendants' counterclaim is denied.

Issues being joined, the case was tried at the November, 1934, term of said Court before his Honor, Judge P. H. Stoll, and a jury. At the conclusion of the testimony offered in the case, the plaintiff made a motion for a directed verdict. Counsel for the defendants opposed the motion upon the grounds hereinafter referred to, which grounds the trial Judge overruled, and instructed the jury to write a verdict in favor of the plaintiff against the defendants for the sum of $10,715.53, the amount involved in the appeal.

In this connection we call attention to the fact that, after the trial Judge had overruled all contentions of the defendants and directed the verdict for the plaintiff, as above stated, counsel for defendants submitted instructions to be given to the jury. As stated in the record, these requests were refused by the trial Judge. As the same time counsel for the defendants made a motion for a directed verdict in favor of the defendants, upon grounds set forth in the record. This motion was also overruled.

From the judgment entered on the verdict, the defendants have appealed to this Court, imputing error to the trial Judge in the particulars set forth under their exceptions. While there are nine exceptions presented by appellants, counsel for the appellants state their contentions as follows:

"1. That the Court erred in denying to appellants the rights and benefits arising out of Section 8708 of the Code,

in refusing to direct a verdict upon appellants' motion based thereon, and refusing a new trial, for the reasons stated in appellants' exceptions, one, two and three, and authorities cited herein.

"2. That the Court erred in denying to appellants the rights and benefits arising out of the Act of 1933 (38 Sts., 350), in refusing to submit the question of the true value of the mortgaged property to the jury, as requested by appellants (fols. 325-330), and in refusing appellants' motion for a new trial (fols. 370 to 385).

"3. That his Honor erred in his ruling that the plaintiff's right of action was valid under the laws of the State of Tennessee, no such laws having been pleaded or proved, for the reason that under the law and public policy of this State no such action could have been maintained.

"4. His Honor erred in overruling the appellants' contention that the Court, sitting in equity, has inherent power and jurisdiction to require a mortgagee, who has acquired the whole of the mortgaged property at sale under the power of sale contained in the mortgage, during the period of financial distress, for cash, without competitive bidding and at an inadequate price, to account for and credit on the debt the true value of the mortgaged property; in refusing to so charge the jury, and in refusing to grant a new trial on that ground.

"5. His Honor erred in holding and ruling that there is nothing in the obligation sued on by the plaintiff subversive of the public policy of this State; that there is no property right, in the constitutional sense involved in any particular form of remedy at law or in equity.

"6. His Honor erred in ruling that the appellants could not hide under the laws of this State to avoid liability for a debt; the ruling being a reflection upon the laws of this State which are not designed to aid any person to avoid paying a debt, but to prevent a creditor from taking undue advantage of his debtor by getting in value more than the debt

and then seeking the aid of the Court to obtain a deficiency judgment, and subject more property of the debtor to the payment of the debt. Also the ruling tends to reflect upon the appellants, who, in good faith and earnestness have invoked the protection of the laws of this State to prevent the sequestration of their remaining property by means opposed to the law and public policy of this State."

Appellants further state that "all exceptions are relied on, and appellants have endeavored to present as concisely as possible the issues and authorities supporting them."

For the purpose of a clear understanding of the questions raised by the appeal we will state, in substance, the facts alleged in the pleadings.

The plaintiff, a corporation under the laws of the State of Tennessee, with its principal place of business in the State of Tennessee, on the 13th day of June, 1930, loaned to the defendants, Dever Little and Maud S. Little, residents of Cherokee County, S. C., the sum of $20,000.00, and at said time the defendants executed and delivered unto the plaintiff their "joint and several note and obligation," agreeing to pay to the plaintiff the said sum of money in certain specified installments, at certain specified dates of maturity, therein stipulated, with interest thereon from April 1, 1930, at the rate of 6 per cent. per annum, payable semiannually, on the 1st days of April and October, each year, beginning October 1, 1930; and contemporaneously therewith, June 13, 1930, the defendants executed and delivered to M. D. Arnold, Jr., and J. Harry Price, as trustees, a trust deed, to secure the payment of the said note and obligation according to its terms and conditions. In this connection the plaintiff further alleged, in said complaint:

"That among other conditions stipulated under the terms of said note and trust deed, it was agreed between the parties thereto, that if any installment of principal or interest or any part thereof should be in default, or in case any of the terms, provisions or covenants contained in said note

or in said trust deed should be violated or broken, then upon the happening of all or any such events, the holders of said note, might at its or their option and without notice or demand, declare the entire debt whatsoever, immediately due and payable, and in the event, said obligation should be placed in the hands of attorneys for collection, there should be added to the principal and interest due on said note, 10 per cent. attorneys' fees.

"That among other covenants and agreements contained in the alleged trust deed, the defendants herein agreed to keep the taxes on the real estate therein conveyed in trust, paid when due; to keep the buildings thereon in repair and to keep them insured against loss from fire, and in the event of default in any or all such respects to authorize the plaintiff herein as holder of the debt secured by said trust deed, to pay said taxes in default, or said insurance premiums in default and add the expenses so incurred by the said Fidelity-Bankers Trust Company, the plaintiff herein, to the principal debt to be part thereof in all respects as if embraced in the original obligation."

The plaintiff further alleged the following status of the said debt:

"Debits

| | |
|---|---|
| Principal of Note | $20,000.00 |
| Interest to December 6, 1933 | 1,263.34 |
| Insurance Premiums paid by Plaintiff | 339.86 |
| 1931 State and County taxes | 323.35 |
| 1932 State and County taxes | 336.92 |
| 1933 State and County taxes | 325.00 |
| 1931 City taxes | 616.55 |
| 1932 City taxes | 675.70 |
| 1933 City taxes | 637.45 |
| Advertising sale under Trust Deed | 25.00 |
| Interest due on deferred interest | 24.13 |
| Total Due | $22,773.00 |

"All of said matters being in default.

"That the following items of credit have been made on said obligation by plaintiffs:

"Credits

October 10, 1930, amount paid by drafts.....$ 500.00
March 3, 1931, amount paid by drafts........ 1,000.00
September 29, 1932, amount paid by drafts.... 294.30
October 3, 1932, amount paid by drafts....... 294.30
October 1, 1932, amount paid by drafts....... 294.30
December 6, 1933, Proceeds Sale under Trust
 Deed ................................ 12,000.00
February 21, 1934, by credit rent from Sterchi
 Bros. Stores, Inc. ..................... 110.00
 _____
 Total Credits..........................$14,492.90

Alleging the balance due of principal, interest, and attorneys' fees to be $11,729.30, plaintiff demanded judgment against the defendants for said sum of money.

The defendants, Dever Little and Maud S. Little, in their answer to the allegations of the complaint, admit that the plaintiff is a corporation under the laws of the State of Tennessee, and that the defendants are residents of the county of Cherokee, said State of South Carolina; admit, in effect, that the defendants executed a certain note to the plaintiff for the payment of the sum of $20,000.00, and delivered the same to the plaintiff, together with a trust deed as security for said obligation, with interest at the rate of 6 per centum per annum, but the defendants state that the said papers are either in the hands of the plaintiff or its attorneys and demand a production of the same for the purpose of ascertaining the conditions and stipulations therein contained.

As to the allegations in plaintiff's complaint regarding taxes and insurance alleged to have been paid by the plaintiff, the defendants deny information sufficient to answer

said allegations, and demand that all tax receipts, insurance receipts, and all other original evidence of expenditures, etc., be produced by the plaintiff, for the information of the defendants. The defendants deny the correctness of the credits set up by the plaintiff, and in effect deny all allegations in the complaint and admitted in this answer.

Further answering the complaint as a defense and as a counterclaim thereto, the defendants allege:

"1. That on April 1, 1931, the defendants remitted to the plaintiff herein the sum of Fifteen Hundred, Eighty-five and No/100 ($1,585.00) Dollars; and on September 29, 1931, the sum of Five Hundred Fifty-five ($555.00) Dollars; that on April 1, 1932, the plaintiff collected from the tenant in the mortgaged building the sum of Three Hundred, Fifty ($350.00) Dollars; on May 1, 1933, Thirteen and 50/100 ($13.50) Dollars.

"2. That in April, 1932, because of the illness of the defendant, Dever Little, and his inability to attend to business affairs, and in order to meet all payments on the obligation to plaintiff, the defendants assigned to the plaintiff all rents from the premises then occupied by Sterchi Furniture Company, at a rental of Three Hundred, Fifty Dollars, and gave to plaintiff full authority to collect all future rents, to keep the premises leased, and to apply all rents to the loan account, and as the defendants are informed and believe, the plaintiff collected all rents for the months of April, May, June, July, and August, 1932, which the plaintiff has not accounted for except for the month of April, 1932, and except also the sum of One Hundred and Ten Dollars ($110.00) credited in the complaint as having been rents from Sterchi Brothers, as of February 21, 1934, whereas, as defendants are informed and believe, the same was made up of the sum of One Hundred ($100.00) Dollars received plaintiff from Sterchi Brothers as part payment of One Hundred ($100.00) Dollars on account of rent due by Sterchi Brothers for the month of September, 1932, whereas plaintiff should have

collected the sum of Three Hundred, Fifty ($350.00) Dollars for said month; and the sum of Ten ($10.00) Dollars collected by Sterchi Brothers on account of rent for the month of October, 1932, whereas plaintiff should have collected the sum of Three Hundred, Fifty ($350.00) Dollars for said month.

"3. That notwithstanding the plaintiff had full power and authority from the defendants to have charge of the premises so leased and embraced in the trust deeds, to manage, and lease said building and premises, and to collect all rents therefrom to be applied to the debt due by defendants to plaintiff, and held by assignment and delivery the rental contract between the defendant, Dever Little, and Sterchi Brothers, the tenant; the plaintiff, by its own negligence and want of due diligence failed and refused to collect the rents due by Sterchi Brothers for the months of September and October, 1932, except as above stated, causing a loss to defendants of the sum of Five Hundred, Ninety ($590.00) Dollars.

"4. That by reason of the foregoing statement of facts, the plaintiff should account to the defendants for the sum of Two Thousand, Four Hundred, Fifty ($2,450.00) Dollars, on account of rents as aforesaid, less the sum of One Hundred, Ten ($110.00) Dollars, leaving a balance of Two Thousand, Three Hundred, Forty ($2,340.00) Dollars which plaintiff should account for."

Further answering the complaint, the defendants by way of defense and counterclaim allege:

"1. That in the Spring of 1932, and up to the times hereinafter mentioned, the plaintiff was in control of the premises described in the said trust deed, with power and authority to collect all rents from the tenant in possession, to lease said building, and to apply all rents to the amount due by defendants to plaintiff.

"2. That the premises were then leased to Sterchi Brothers under a contract for a term expiring about August 31,

1932; that prior to the expiration of said lease Sterchi Brothers, the tenants, made an offer to continue to occupy the leased premises from month to month at a rental of from one hundred to one hundred and fifty dollars per month, with privilege given to either party to terminate such contract on sixty days notice, which contract, had the plaintiff accepted the same, would have realized from One Hundred ($100.00) Dollars to One Hundred, Fifty ($150.00) Dollars per month for the defendants' benefit, to be applied to the indebtedness due to plaintiff by the defendants; but, instead of accepting said offer, the plaintiff allowed the tenant, Sterchi Brothers, to vacate the premises, and the same have remained vacant and unoccupied from October 1, 1932, to the date of the alleged sale of the same by the plaintiff on December 6, 1933, during which time plaintiff, although in full charge of the premises, neither secured nor attempted to secure a tenant for the same, but permitted the premises to remain vacant for fourteen months and five days, thereby causing a loss to defendants of a minimum sum of Fourteen Hundred Dollars, or a maximum of Eighteen Hundred Dollars, which was due to the negligence and mismanagement of the plaintiff. For this they should account to the defendants.

"3. That if the plaintiff had exercised due diligence after taking over the control and management of the premises embraced in the trust deed, and had not been negligent with respect thereto, it would have collected and applied to the debt due to it by the additional sum of Four Thousand, Two Hundred ($4,200.00) Dollars, which would have been sufficient to keep the loan in good standing, and to prevent the sacrifice of the premises described in the said trust deed, and for this the plaintiff should, in equity and good conscience, be held to account."

The defendants, further answering the complaint, allege:

"1. That in the face of the negligent acts and dereliction of duty on the part of the plaintiff as set out above, all of

which is made a part of this section, the plaintiff, in spite of its own negligent acts, and in spite of the era of financial depression, caused the premises of the defendant, Dever Little, embraced in the said trust deed to be sold on salesday in December, 1933, and at that sale became the purchaser at the price of Twelve Thousand ($12,000.00) Dollars of the property of the defendant, Dever Little, which according to the appraised value placed thereon by the plaintiff, was then worth Sixty Thousand Dollars; and at the time of the sale was worth in actual value more than the entire debt now claimed to be due by the plaintiff. .

"2. That the management and control of the said property embraced in the said trust deed having been placed in and under the authority of the plaintiff, and the plaintiff having accepted the trust, it became the duty of the plaintiff, occupying to the defendants the relation of trust and confidence, to exercise the utmost good faith in dealing with the trust property, and to exercise due diligence in the management and protection of the same and of defendants' interest therein; that having failed to do this, as shown by the facts alleged heretofore, and having purchased the said property, and had a conveyance executed itself under the circumstances and conditions heretofore set out, equity requires that the plaintiff should account for the fair value of said property which, if required, will wipe out and cancel the amount alleged by the plaintiff to be still due and owing to it by the defendants; and before the sale the defendants offered to convey the said property to the plaintiff in satisfaction of the amount remaining due on the note and trust deed, but the plaintiff refused said offer and persisted in selling the property and acquiring title in its own name, disregarding the trust relation."

The defendants further make this allegation in answer to the complaint:

"1. That the amount of ten per cent. claimed by the plaintiff's attorneys herein, is excessive and oppressive, and plain-

tiff's attorneys are entitled only to such fee as the Court should deem equitable and just."

Based on the above allegations, the defendants asked for judgment as follows:

"First, that plaintiff be required to account in a full and complete manner for all rents received, and which by due diligence and good faith they should have received, and the application of the same to the debt secured by the trust deed.

"Second, that plaintiff be required to account for loss of rents due to its failure to renew the lease and failure to procure a tenant or tenants for the premises placed under its control by the defendants.

"Third, that the plaintiff be required to account for the fair value of the premises embraced in the said trust deed, and apply such fair value to the amount actually remaining due on the said debt; and for judgment against the plaintiff for such sum or sums as the Court may find in excess of the fair value of said premises and in favor of the defendants upon a full and complete accounting between the plaintiff and the defendants.

"Fourth, that in the event plaintiff be entitled to judgment against the defendants that the court will allow as attorneys' fee for the plaintiff's attorneys only such sum as may be equitable and reasonable.

"Fifth, that the complaint be dismissed.

"Sixth, for such further relief as may be just and equitable."

After hearing argument, pro and con, on the motion by the plaintiff for a directed verdict, the trial Judge made the following ruling:

"As I see this case, and I say at at the start, my sympathy is always with the debtor, and in quite a number of cases I have refused to confirm sales, for the reason mentioned in the new Statutes, but that is not the case here, and neither is the case in the section of the Code you referred to; that

section of the Code referred to the 'old Scotch mortgage' they called it, and you could do just as is done in Tennessee. But this case, as I see it, is a mortgage, if you wish to term this Trust Deed a mortgage, in Tennessee over Tennessee property. Now, if it was in South Carolina and a Tennessee bank had taken a mortgage over South Carolina property, I would agree with you; but that is not the case. These defendants went to Tennessee, where they owned property, they borrowed Tennessee money, and created a Trust Deed in which they pledged Tennessee property to respond to the note that they gave in case of default. There was a default; it is not denied. The Trustees sold the property, under provisions of the Trust Deed, and applied the proceeds to the note. Now, the plaintiff comes into this Court, not on a mortgage, not on a trust deed, but the plaintiff comes suing on a note, for the balance due on a note; that is the only thing we have here, a suit on a note for the balance due. I don't think the citizens of this State, in the circumstances could hide under the law covering South Carolina mortgages and say that Tennessee can't do that, because when the matter comes into this Court it is a suit on a note for a balance due on a note. They made no attack on that sale, or 'foreclosure' as you term it, there, so this Court must recognize it as a valid sale until the contrary is shown. There has been no attack made on it. As I see this case, it is a suit for the balance due on a note. Now, there is no testimony anywhere from the defendants to maintain the counterclaim, or to render inaccurate the statement of what is due. As I see it, here is nothing to go to the jury; I wish there was. And as I say, I make it a rule to look for anything to hang my hat on in the case of a debtor, but I don't think the cases you cite are applicable to this case. So, I am going to direct the verdict."

As above stated, after the trial Judge had directed a verdict for the plaintiff, counsel for the defendants presented certain requests to charge, and, for the purpose of showing appellants' position, we quote the same herewith, as follows:

"1. That it appears from the Complaint, and the testimony in this case, that the plaintiff is seeking to recover a judgment against residents of this State, which arises from a sale of real estate mortgaged by the defendants to the plaintiff, in Elizabethton, Tenn., which sale was made without the mortgaged debt having been ascertained by a Court of competent jurisdiction, without the consent of mortgagor in writing as required under Section 8707 of the Code of Laws of S. C., 1932, and that under the equal protection clause of the Constitution and the privileges and immunities clause of the State and the United States, that the Courts of this State will not afford a remedy to a person whose cause of action arises in another State, and which is contrary to the laws and public policy of the State of South Carolina, and, therefore, neither under the rule of comity nor under the Constitution provisions can a resident of another State come into the Courts of this State and obtain a remedy or judgment against a resident of this State on any cause of action which is contrary to the laws and public policy of this State. I further charge you, that under the Act of 1933, passed by the General Assembly of South Carolina, entitled an act to provide for the relief of real estate mortgagors and other judgment debtors from deficiency judgments and foreclosures, to the true value of the mortgaged property, and to prescribe the procedure thereon; that this law is intended in all cases, whether actions for deficiency judgments arising in this State or from some other State, to protect mortgagors in this State from any judgment for deficiency unless the fair value of the mortgaged property shall be applied to the amount of the mortgage debt, and then and only in such event, judgment for deficiency can be had against a resident of this State in case the fair value of the property is less than the amount of the debt secured by the mortgage. I charge you that it is your duty to ascertain, from the testimony in this case, what is a fair value of the mortgaged property in Elizabethton, Tenn., on the date of sale Novem-

ber 6th, 1933; also to find what was the amount of the mortgaged debt existing on that date, and to credit the fair value of the property, as ascertained by your verdict, to the amount you may find due upon the mortgaged debt, and if the fair value of the property is equal to the amount of the mortgaged debt existing as of November 6th, 1933, your verdict will then be for the defendants. But in the event the fair value of the said property shall be less, according to your verdict, than the amount of the mortgaged debt as of November 6th, 1933, then you may find for the plaintiff a verdict for the difference between the debt and the value of the property, together with reasonable attorneys' fees."

Before the trial in the Circuit Court was concluded, counsel for the plaintiff stated that, in view of the circumstances of the case, the plaintiff would reduce the attorneys' fees to 5 per cent., in lieu of the amount provided under the written obligation executed by the defendants, and, this being ordered by the Court, the amount of the verdict was reduced accordingly.

The record discloses that due notice of the sale of the land described in the trust deed was given in accordance with the provisions of the said trust deed.

The record discloses also that the defendants made a motion for a new trial in the cause. His Honor, the trial Judge, in overruling this motion, issued the following order:

"On June 13th, 1930, the defendants obtained a loan from the plaintiff in the sum of twenty thousand dollars and as evidence of the obligation, executed their joint note conditioned for its payment in certain stipulated installments.

"As security, the defendants executed a trust deed to M. D. Arnold, Jr., and J. Harry Price, as trustees, covering certain real estate situated in the city of Elizabethton, Tennessee.

"The defendants defaulted in the payment of principal, interest, in the payment of taxes and in the payment of insurance premiums.

"The evidence as to these matters was uncontroverted.

"After negotiations on the part of the parties or their agents for an adjustment of the defaults failed, the trustees exercised their rights under the trust deed to sell the property and accordingly the real estate was advertised and sold and the proceeds of the sale were credited by the Fidelity-Bankers' Trust Company on the note.

"This action was for recovery of the balance alleged to be due on the obligation.

"At the conclusion of the testimony, the plaintiff moved for a directed verdict for the amount shown to be due, less a reduction of five per cent. attorneys' fees, which counsel for plaintiff announced in this connection would be agreeable to them. A verdict was accordingly directed for the plaintiff.

"There was no motion noted on the part of defense counsel at the time on the minutes of the Court, but subsequently notice was served upon plaintiff's counsel of a motion to set aside the verdict and for a new trial.

"Prior to the direction of the verdict for the plaintiff, the Court entertained at length argument on the part of defense counsel in opposition to the motion, and the points and authorities were duly considered. The grounds now presented in the motion herein, while somewhat elaborated upon, are substantially those urged in opposition to the motion on the part of plaintiff for a directed verdict.

"As stated in that connection, the note sued upon is a Tennessee contract on the part of the defendants. The trustees of the trust deed exercised their lawful rights and sold the real estate and accounted to the beneficiary of the trust, the holder of the note for the proceeds. There is no question as to proper credits for this and all other payments and the amount for which the suit has been made is admittedly correct as the balance due on the note, unless the alleged counterclaim could be sustained.

"The defendants do not allege fraud and there is nothing in the record to show that all proceedings were other than

regular, and that the sale of the real estate by the trustees was other than in strict accordance with the terms of the trust agreement.

"There was no effort on the part of the defendants, so far as the record shows, to enjoin the sale or to protect their equities, if any, at the sale. Nor do I find anything in the case upon which defendants can legitimately base a counter-claim.

"While I do not consider that the case presents a federal question in any sense, I am convinced that there is nothing in the note or obligation upon which this action is based, subversive of the public policy of the forum in which the action has been brought and that the question of comity is not involved. There is no property right, in the constitutional sense, in any particular form of remedy at law or in equity.

"I am constrained, therefore, after a further and more careful consideration of the case, to overrule the motion herein presented, and it is therefore ordered

"That said motion for setting aside the verdict and for a new trial be and it is hereby overruled."

We will consider the exceptions in the order presented by appellants. Exception 1 reads as follows:

"EXCEPTION 1

"His Honor erred in not holding and adjudging that the plaintiff is not subject to the provision of Section 8708 of the Code of 1932, which provides that no sale of real estate by the mortgagee under power of sale contained in the mortgage shall be sufficient to pass title to the purchaser, unless the debt so secured shall be first established by the judgment of a court of competent jurisdiction or by the written consent of the mortgagor subsequently to the maturity of the debt."

Counsel for the appellants assign the following reasons for the above alleged error:

"(a) That this statute having been in force in this State for forty years, establishes the public policy of the State for the protection of its own citizens and all other persons com-

ing within the jurisdiction of the State; and under the equal protection clauses of the State and Federal Government must operate equally and uniformly upon all persons within the jurisdiction of the State, regardless of place of residence, race, color or other distinction.

"(b) That, as the evidence shows, the plaintiff sold the property of the defendants at Elizabethton, Tenn., under power of sale contained in the trust deed or mortgage, without having the debt thereby secured established by a Court of competent jurisdiction, or by written consent of the defendants, mortgagors; and to permit the plaintiff, in the Courts of this State, to recover judgment for a deficiency, where such remedy would be denied to all persons and citizens of this State under a similar state of facts, deprives the defendants of the equal protection of the laws of this State, abridges their constitutional immunities, and discriminates against citizens and residents of this State in favor of residents of another State who voluntarily come within the jurisdiction of this State.

"(c) Because a sale of mortgaged property in this State without complying with the provisions of Section 8708 of the Code, would not only invalidate the title of the purchaser, but would furnish no basis for a deficiency judgment.

"(d) Because, the plaintiff had an equal right, along with other persons within the jurisdiction of the State, to have had the debt of the defendants, secured by the trust deed or mortgage, established by a judgment of any court of competent jurisdiction, or by the written consent of the defendants, and then come into the Courts of this State to recover a judgment for a deficiency upon an equal footing with all other persons within the jurisdiction of the State; and had such judgment been obtained in the courts of the State of Tennessee, it would have been entitled to full faith and credit, if properly exemplified, by the Courts of this State."

Section 8708 of the Code of 1932, to which reference is made by appellants, reads as follows:

*"Debt Secured Must be Proved before Sale.*—No sale under or by virtue of any mortgage or other instrument in writing intended as security for a debt, conferring a power upon the mortgagee or creditor to sell the mortgaged or pledged property while said power remains of force or has not been revoked by the death of the party or parties executing such mortgage or instrument shall be valid to pass the title of the land mortgaged, unless the debt for which the security is given shall be first established by the judgment of some court of competent jurisdiction, or unless the amount of the debt be consented to in writing by the debtor subsequently to the maturity of the debt, such consent in writing to be recorded in the office of the register of mesne conveyance, or clerk of the court, where the mortgage or other instrument in writing given to secure such debt is, or ought to be, recorded: *Provided, however,* That nothing herein contained shall render it necessary, nor shall it be necessary, to make the personal representative of a deceased mortgagor a party to any foreclosure proceeding; nor in any foreclosure proceeding (if the mortgagor be dead) shall it be necessary to first establish the debt by the judgment of some court of competent jurisdiction in order to obtain a decree of foreclosure and sale; nor shall it be necessary to make the mortgagor who may have conveyed the mortgaged premises a party to any action for foreclosure where no judgment for any deficiency is demanded: *Provided, further,* That no sale heretofore made under foreclosure proceedings, to which the personal representatives of deceased mortgagors were not parties, shall be invalid by reason of the absence of such personal representatives."

This is not an action to sell real estate; nor is it an action to invalidate a sale to real estate and declare the title therefor invalid; but the action is to recover from the defendants a certain sum of money, alleged to be the balance due on a note of the defendants, executed to the plaintiff and secured by a trust deed or mortgage executed

by the defendants to certain trustees. The property referred to is located in the State of Tennessee, and, of course, could not be sold under an order issued by the Courts of this State; and the Courts of this State could not entertain a suit involving the title to said lands; but there is nothing to prevent the plaintiff from maintaining a suit in the Courts of this State against the defendants, who are residents of this State, residing in the said County of Cherokee, for the purpose of recovering judgment against said defendants for a certain sum of money, alleged to be the balance due on a note of the defendants executed to the plaintiff by the defendants and secured by a trust deed or mortgage executed by the defendants to certain trustees. As we view the case, the above section of the Code referred to, Section 8708, does not control the issue under consideration, and, in this connection, we wish to state that, in our opinion, the public policy of this State is not violated by the ruling declared in the lower Court on this question. The trust deed referred to herein gave to the plaintiff two methods to use in getting a sale of the land referred to in case of default in the payments. One method permitted the plaintiff to apply to the Court, that is, the Court of the State of Tennessee where the land is located, for an order of sale. The other method permitted the plaintiff, in default of payment by the defendants, to make request to the trustees to sell the land in question, after advertisement for a certain period of time. The plaintiff in this case resorted to the last-mentioned plan, and the land was accordingly sold by the trustees; due notice being given to the defendants, and the amount for which the land was sold applied on the alleged indebtedness. Appellants call attention to the fact that the purchaser of the land in question was the plaintiff herein. It is the contention of the appellants that the land did not sell for its full value, and for this reason, it seems, make the contention that the plaintiff should be made to give the defendants credit for the difference for which the land sold and its real value at the time of the sale,

in addition to the amount for which it sold; that is, that the plaintiff should give the defendants credit for the full value of the land at the time of said sale, regardless of the amount for which it sold. We find nothing in the trust deed or the note involved upon which to base such claim or contention. In this connection, for the purpose of showing what powers the defendants gave to the plaintiff and said trustees, we quote herewith the following provision in said trust deed:

"Should the debt hereby secured, or any part thereof, not be paid when it becomes due by maturity, or should there be failure to perform any of the covenants to be kept and performed by the parties of the first part, their heirs, executors and administrators, then the parties of the second part, their successors or assigns, shall have the right and are hereby authorized and empowered after giving at least three weeks' notice of such sale by advertisement, published once a week in some newspaper published in said Carter County, Tennessee, to sell said property at the Court House door in said State and County to the highest bidder for cash, free from the equity of redemption, a repurchase of said land and premises, homestead, dower, courtesy, and all other exemptions of every kind, which are hereby expressly waived; said foreclosure sale may be made by the party of the second part in person or by his agent or attorney if he should not be personally present; and said parties of the second part or their successors shall make a deed to the purchaser; and the owner of said debt may bid and purchase at such sale. And the said parties of the second part or their successors shall collect the proceeds of such sale and apply the same in the manner following:

### APPLICATION OF PROCEEDS OF SALE

"(a) To the payment of all costs and charges of executing and enforcing this trust, including a trustees' commission of 5 per cent. attorneys' fees, in case the note or notes are placed in the hands of an attorney at law for col-

lection, costs of court and all other expenses of any litigation which may in any way arise by virtue of the execution and enforcement of this trust, which charges, commissions, fees and costs shall be added to and become a part of the principal debt.

"(b) To the payment of said debt or any balance remaining unpaid, whether due or not due, and also to the payment of any and all amounts which the holder of the debt hereby secured has paid out on account of taxes, assessments, insurance and repairs, together with interest, fees and expenses thereon as hereinbefore provided for; and,

"(c) To pay the balance, if any, to the order of the parties of the first part, their heirs, executors and administrators."

Neither the note nor the trust deed referred to required that the balance owing on the note be legally determined or agreed upon before the sale of said land, for the purpose of procuring funds to apply on said note; and the plaintiff had the right to institute and prosecute the suit in the Courts of this State, where the defendants reside, to procure a judgment against the defendants for the balance owing on the said note. Even if it be conceded that the said land sold for less than its actual value, at the time of sale, the plaintiff can maintain the action, and the sale referred to cannot be attacked in this suit. Unfortunately, the defendants failed to take steps in the courts of Tennessee to protect themselves when the land was being sold in that state under the provisions of said trust deed, executed by the defendants in said state. No doubt the defendants are sustaining a heavy loss, but, under our view of the case and the law applicable thereto, we are unable to give to them any relief. Like many other people, when conditions looked good and promising they took a chance, hoping to make some money, but before they were able to sell the land in question the price of real estate "dropped," and, instead of making, they lost. The suggestion is made that,

on account of their financial condition at the time of said sale, the defendants were unable to protect themselves, even though the land was advertised in the manner required by the said trust deed and that the defendants had notice that the sale was to take place. Such fact, however, does not enable this Court to give the relief asked for by the defendants. In our opinion, the trial Judge went as far as he could to help the defendants, allowing the defendants to offer testimony for the purpose of showing, if they could, that the defendants were entitled to certain alleged credits which the defendants claimed they were entitled to, but had not gotten. The defendants were permitted to introduce all competent testimony offered which had any bearing on the balance owing on the said note, but, after all competent testimony on this issue was in, the trial Judge reached the conclusion that there was only one inference to be drawn therefrom, namely, that the plaintiff had allowed the defendants full credit for all sums paid by the defendants and for all funds collected by the plaintiff or the said trustees. Therefore the trial Judge directed a verdict for the plaintiff for the amount asked for by the plaintiff.

Exception 2 is as follows:

"His Honor erred in holding and ruling that the law of this state has no extra-territorial effect, and that the plaintiff's rights arise under the laws of the State of Tennessee, and are legal and valid under the laws of that state, and that defendants cannot hide behind the laws of this state, the errors being:

"(a) If the laws of this state have no extra-territorial effect, then by the same rule the laws of the State of Tennessee have no extra-territorial effect, yet His Honor gave extra-territorial effect to some unpleaded and unproven law of the State of Tennessee, repugnant to the law and public policy of this state, and injurious to the defendants who are residents and citizens of this State."

This action is upon a note executed in the State of Tennessee, and our attention has not been called to any statute of that state preventing the enforcement of the provisions of said note, and the suit is governed by the common law. Further, we find no provision in the note which could be considered in violation of the public policy of this state.

## "Exception Three

"His Honor erred in holding and adjudging that the rights of the plaintiff are to be determined under the law of the State of Tennessee, and under the laws of that State, the plaintiff had the right to maintain this action in the Courts of this State against the defendants, who are residents and citizens of this State; the errors being," according to appellants' contention, the following:

"(a) That if the laws of the State of Tennessee give to plaintiff a right of action, then it became necessary for plaintiff to plead and prove such laws as material to its right to maintain this action; and such laws not having been pleaded or proven, it was error for the Court to take judicial cognizance of such laws, especially where such laws of the State of Tennessee, if any such exist, are repugnant to the law and public policy of this state as expressed in Section 8708 of the Code of 1932.

"(b) Because, even if such laws of the State of Tennessee had been pleaded and proven, there is no rule of comity, no requirement of the Full Faith and Credit Clause of the Federal Constitution which requires any Court to enforce the laws of another State against citizens and residents of the forum, where such foreign laws are repugnant to the law and public policy of the State of the forum, or injurious to the rights of citizens of the state of the forum."

As shown in our discussion of the first exception, the parties to the action are governed by the provisions in said

note and the provisions in said trust deed given to secure the same, and this action, instituted by the plaintiff in the Courts of this State, where the defendants reside, for the purpose of collecting the balance due on said note, is not in violation of the laws of this State, and does not violate the public policy of this State. Section 8708 of the Code of 1932, to which the appellants refer, in our opinion, has no application to the question suggested by this exception.

## EXCEPTION FOUR

"His Honor erred in overruling the defendants' defense under the provisions of the Act of the General Assembly, 38 Sts., 350. To provide for the relief of real estate mortgagors from deficiency judgments by having the true value of the mortgaged property ascertained and credited on the mortgage debt, the error being that this Statute gives all mortgagors within the jurisdiction of the State a substantial right to have the true value of the mortgaged property ascertained, and credited on the debt before any deficiency judgment can be recovered, and this Statute must operate equally upon all persons coming within the classification of mortgagors and mortgagees, and within the jurisdiction of this state, in order to comply with Art. 1, Section 5, of the Constitution of this State, and Art. 14, Section 1, of the Constitution of the United States, both of which provide that no person within the jurisdiction of the state shall be denied the equal protection of the laws."

Under this exception the appellants allege the following specific errors:

"(a) The plaintiff, having voluntarily come within the jurisdiction of this state for the purpose of recovering a deficiency judgment against the defendants, who are residents and citizens of this state, is bound by the law of the forum and must maintain his remedy, if at all, upon an equal footing with all other persons, falling within the

classification of mortgagees, and account for the true value of the mortgaged property at time of sale; otherwise the Court would give to a mortagee who is not a resident of the State an advantage over a mortgagee who should be a resident of this State, and deny to the defendant mortgagors the equal protection of the laws of this state.

"(b) Because there is no rule of comity or law which requires any court of the State to enforce a right arising without the State in favor of a person residing beyond the limits of the State, and against a person residing within this State, where the enforcement of such right is repugnant to the laws and public policy of this State, and would be injurious to citizens of this State by giving an unequal advantage to a person residing without the State.

"(c) Because, if the method provided by the Act of 1933 for ascertaining the true value of the mortgaged property is inapplicable under the circumstances of this case, yet the statutory right of the defendant, mortgagors, can and should be enforced by the Court of Equity by its own appropriate means, and the Court should have submitted it to the jury to find from the testimony the true value of the mortgaged property, testimony having been taken and submitted for that express purpose.

"(d) Because the equal privileges and immunities and equal protection of the laws provisions of the Constitution require that persons, though non-residents, asserting rights in the Courts of this State shall do so, if all, on equality with the other persons in this State, embraced within the classification of mortgagors and mortgagees."

The Act of the General Assembly of the State of South Carolina, Act May 2, 1933, St. at Large, p. 350, referred to by the appellants in this exception, contains this provision: "In every real estate foreclosure proceeding commenced hereafter or in which judgment or decree of sale is rendered after the approval of this Act, any defendant against whom personal judgment be taken, whether he has theretofore appeared in said action or not, may within

ninety (90) days after the sale of the mortgaged property apply by verified petition to the Clerk of Court in which the decree or order of sale was taken for an order of appraisal. Provided, That in the event that no personal judgment is asked for then the provisions of this Act shall not. apply." Section 1.

The Act further provides, among other things, that: "Upon the filing of such Petition and deposit with the Clerk of a sufficient sum to pay the costs of the subsequent proceedings he shall issue an order that the property be appraised at its true value as of the date of sale by three disinterested freeholders of the County in which the property is located who shall not be parties to the action or connected in business with or related by blood or marriage within the sixth degree to any such." Section 2.

As to the force and effect of the other provisions contained in said Act, reference is made to the several other sections of the same. As stated, the land covered by the trust deed herein referred to is not located in the State of South Carolina but is located in the State of Tennessee. Of course, the Legislature of this State cannot enact laws governing the sale of lands in that state and the Act under consideration cannot control the land in question. Even if the Act under consideration could be said to be applicable in this case, it is clear that the defendants in the case at bar have not placed themselves in a position to demand the relief provided for in the Act under consideration. There is no proof that the defendants, "within ninety (90) days after the sale of the mortgaged property" (Section 1), applied by verified petition to the Clerk of the Court for an order of appraisal; and, further, it has not been shown that the defendants deposited with the Clerk of Court the costs as required in the Act under consideration. Furthermore, no proof has been produced, so far as the record discloses, that at the time in question there existed, or now exists, in the State of Tennessee, any statute of the nature of the statute referred to by appellants in this exception,

and, further, if such statute was or is in existence, no proof has been produced that the defendants complied with the provisions thereof. In this connection we again call attention to the fact that the record fails to disclose proof that there was any attempt on the part of the defendants to enjoin the sale of the land in question by the said trustees, notwithstanding the fact that the record clearly shows that the land was advertised for sale as required under said trust deed and also that the defendants had notice of such sale. We may further state, in this connection, that the record discloses that the defendants did not appear at the sale, notwithstanding the fact that they had notice of the same and, so far as the record discloses, no one appeared for them. It must be kept in mind that the sale was made, not under statute, but under contract, entered into between the parties. There were two methods provided thereunder for the sale in case of default by the defendants. One method provided for sale under order of the Court. The other method provided for sale by the trustees, on default in the payment by the defendants. Accordingly, the sale was made by the trustees, and, as we have stated, the record discloses that the property was duly advertised, and further that the defendants had notice of the same. Having failed to take any action in the Courts of Tennessee to prevent the sale, or to have the value of the property ascertained, or to have the sale set aside, the defendants are not in a position to ask the Courts of this State to pass upon the value of said property. They are estopped. In our opinion, it was not proper to receive testimony in this case for the purpose of fixing the value of the said property, and the trial Judge properly refused to submit to the jury that question as to the value of said land. For the purposes of this case, it must be assumed that the price for which the land sold in the State of Tennessee under said sale is, or was at the time of said sale, the true value of the land, and the defendants are bound thereby. There is no allegation or proof of fraud. The defendants

were given an opportunity, on the trial of the case in the lower Court of this State, to introduce testimony for the purpose of showing that additional payments had been made by the defendants on the said obligation, or that payments had been made for which the defendants had not been given credit. In our opinion, this was as far as the trial Judge could afford to go, and, after considering all the testimony by the defendants on this point, his Honor reached the conclusion, and we think properly so, that the only inference to be drawn from the testimony was that the defendants had been given credit for every payment made or for which they were entitled to. Under our view of the case, no rule of comity was violated by the trial Judge in the rulings made by his Honor.

## "Exception Five

"His Honor erred in holding and adjudging that the Court, in the exercise of its chancery jurisdiction, could not require the plaintiff to account for the true value of the mortgaged property of the defendants, sold by and purchased by the plaintiff on December 6, 1933, upon the theory that the laws of this State have no extra-territorial effect over transactions done in the State of Tennessee, the errors being:

"(a) It appears uncontradicted by the evidence that the mortgaged property of the defendants was worth, at the time of sale, from $24,000.00 to $35,000.00, the building alone being insured for more than $19,000.00; that the sale was made for cash, during the period of financial distress; that no bids were made by any other than the plaintiff; that no one had money enough to bid cash for property of such value; that the plaintiff became purchaser at a price less than one-half of the intrinsic or true value of the property. The Court of Equity had jurisdiction to require the plaintiff to do equity, and place itself on an equal footing with all other persons within the jurisdiction

of the State, by accounting for the true value of the mortgaged property at the time of sale, and crediting that value on the mortgage debt, otherwise the equal protection of the laws of this State are denied to the defendants, and an unequal and discriminatory advantage is given to a person within the jurisdiction of the State but happens to be a resident of another State, over the defendants."

## "Exception Six

"As all of the issues raised by the foregoing exceptions were made before his Honor in opposition to the plaintiff's motion for a directed verdict; in defendants' motion for a directed verdict; in defendants' requests to charge; and in defendants' motion for a new trial, the Court erred in not sustaining the defenses of the defendants, and in directing a verdict for the plaintiff."

The allegations of error imputed to the trial Judge under Exceptions 5 and 6 are covered by our discussion of the foregoing exceptions.

## "Exception Seven

"His Honor erred in holding, in his Order refusfusing a new trial, that there is nothing in the obligation sued on by plaintiff subversive of the public policy of the forum in which the action has been brought; and that there is no property right, in the constitutional sense, in any particular form of remedy at law or in equity, the errors being:

"That the provisions of Section 8708 of the Code of 1932 and of the Act of 1933, referred to herein, were designed and made to protect the property rights of all persons within the jurisdiction of the State from having their property subjected to mortgage sales deficiency judgments where the debt has not been established by a Court of competent jurisdiction, or by written consent of the mortgagor; and under the Act of 1933, the right to have the true value of the mortgaged property applied to the mort-

gage debt before any deficiency judgment will be permitted; both of which are substantial property claims embraced within the equal protection and immunity clause of the Constitution."

The issues raised under this exception have, in the main, been discussed in our consideration of the other exceptions, above referred to. The provisions of Section 8708 of the Code of 1932 and the provisions of the Act of 1933, as we have stated above, do not control this case. Even if it could be successfully contended that the sections of the statute referred to were applicable to the sale of lands in the State of Tennessee, it must be remembered that the record fails to show that the defendants are in a position to claim the benefits said statutes were intended to give. The reasons for this conclusion we have stated and discussed in our consideration of the other exceptions, above mentioned. As contended by the respondents, the answer of the defendants admits the execution of the note and trust deed in question, under which trust deed the land was sold by the trustees pursuant to power and authority given thereunder, and the amount that the land brought, which was sold after due advertisement, was credited upon the note in question. As stated above, the said land having been sold strictly in accordance with the power and authority given in the said trust deed, after due advertisement and notice to the defendants, and the defendants having failed to take any steps in the Courts to hold up the sale or to raise any question concerning the same in the State of Tennessee, where the said land is located, and having failed to even attend the sale or to get anyone to appear for them at said time and place, in their interest and behalf, for the purposes of this case it must be assumed that the said land sold for its value, and, the defendants having been given credit for the amount the same sold for at said sale, they are now estopped from raising this question in the Courts of this State in the case at bar. In this connection see the case of *Smith v. Williams et al.*, 141 S.

C., 265, 139 S. E., 625, 54 A. L. R., 964. See, also, the following cases: *Marines v. Goblet,* 31 S. C., 153, 9 S. E., 803, 17 Am. St. Rep., 22; *Latimer v. Marchbanks,* 57 S. C., 267, 35 S. E., 481; *Pollock v. Pegues,* 72 S. C., 47, 51 S. E., 514; *Scarborough v. Woodley,* 81 S. C., 329, 62 S. E., 405; *Sullivan v. Moore,* 84 S. C., 426, 65 S. E., 108, 66 S. E., 561; *McMillan v. Hughes,* 88 S. C., 296, 70 S. E., 804; *Boyce v. Mosely,* 102 S. C., 361, 86 S. E., 771; *Anderson v. Dunbar,* 105 S. C., 416, 90 S. E., 31; *Cannon v. Baker,* 97 S. C., 116, 81 S. E., 478; *Chambers v. Brookman,* 67 S. C., 432, 46 S. E., 39; *Atlanta & C. A. L. Ry. Co. v. Victor Mfg. Co.,* 93 S. C., 397, 76 S. E., 1091. As shown above, the defendants have not shown, or attempted to show, any fraud on the part of the plaintiff, and it clearly appears that the said sale was conducted strictly in accordance with the provisions of the said trust deed, which the defendants duly executed and delivered to the plaintiff. We find no evidence or charge of fraud in any sense. We also wish to state at this time that while the defendants attempted to set up a counterclaim, there is nothing in the record upon which to base the alleged counterclaim. There was a total absence of proof bearing upon the alleged tortious acts of the respondent, and it was clearly the duty of the trial Judge, under the circumstances of the case, to direct a verdict against the defendants on the alleged counterclaim. So far as we have been able to ascertain from the record, there is no proof that the plaintiff or the said trustees committed any act of wrong in connection with the entire transaction. We wish to state also that we fail to find any proof in the record that the plaintiff or the trustees named in the trust deed, failed to do anything that the contract required them to do, which resulted in injury to the defendants; and we fail to find any proof in the record that the plaintiff, or said trustees, failed to do anything which they were obliged to do, that resulted in injury to the defendants. We find no basis for a counterclaim.

"Exception Eight

"His Honor erred in his rulings, overruling the defenses of the defendant and directing a verdict for the plaintiff, in holding that the defendants could not hide under or behind the laws of this State to avoid liability, the error being:

"That the laws of this State, invoked by the defendants, were conceived and made for the protection of all persons within the jurisdiction of the State, to affect equally and uniformly the property rights of all persons falling within the classification therein designated."

## Exception Nine

"His Honor erred in ruling and holding that the plaintiff's right arose under the laws of the State of Tennessee, and under such laws the plaintiff had a valid right of action to enforce the payment of any deficiency; the error being that, while the note and trust deed or mortgage were executed in Tennessee, the plaintiff knew that the defendants were residents of the State of South Carolina, and that any action for a deficiency would have to be maintained against the defendants in the Courts of South Carolina. It was, therefore, in the contemplation of the parties that any claim for a deficiency would have to be enforced in the State of South Carolina, subject to the laws of this State."

The issues raised by these exceptions, in effect, have been considered in our discussion of the other exceptions. We wish, however, to call attention to the testimony that was taken by deposition by the appellants in the State of Tennessee regarding the value of the land in question. At the trial of the case when this testimony was being read by appellants' attorneys, counsel for respondent interposed an objection, upon the ground that such testimony was not competent, and at the close of the reading made a motion, in effect, to strike the same from the record. The trial

Judge did not rule upon the motion at the time, but stated that the matter would be passed upon later. When the matter came up again, the motion was renewed by counsel for respondent, and while, so far as the record discloses, the trial Judge did not specifically rule on the motion, his Honor, by directing a verdict for the plaintiff, held, in effect, that such testimony was incompetent. Under our view of the case, his Honor did not violate the equal protection clause of the Constitution (Article 1, § 5) by any ruling made herein. His Honor, by his action, evidently reached the conclusion that the testimony, taken by deposition in the State of Tennessee, on the question of the value of the said land, was irrelevant and incompetent, and his Honor manifested the same view with regard to the testimony introduced at the trial of the case offered by the respective parties, on the same question. The trial Judge, in our opinion, committed no error in this regard, and we think correctly directed a verdict for the plaintiff on the trial of the case.

While we have not discussed herein every position urged by the attorneys for the parties hereto, we have, in reaching the conclusion expressed herein, carefully considered the same, and also the authorities cited in the briefs of counsel, and, after careful consideration, we think the exceptions should be overruled and the judgment of the lower Court affirmed.

The defendants herein also appealed from the order of the trial Judge settling the case for appeal. After carefully considering the exceptions imputing error in this respect, in connection with the entire record, is is our opinion that the trial Judge committed no error.

It is therefore the judgment of this Court that the exceptions of the appellants be, and the same are hereby, overruled, and the judgment of the lower Court affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.